JOHN FIELD & CO. *v.* GEORGE H. TENNEY.

The fact of partnership may be proved by oral evidence by the partners themselves, in suits with third persons, even if there be written articles; but where the terms on which the partnership is formed become material, the articles should be produced.

The court may, in its discretion, submit to the jury the question, whether the statement of a party, though in writing, was a mere offer of compromise, or an admission of a fact.

A letter containing an admission of a debt, with a proposal as to the time and mode of paying it, is not to be regarded as an offer to buy peace, but is admissible in evidence.

A deposition will not be rejected because the initial letter of the middle name of one of the parties, in the address to the court, is mistaken, it appearing there was no such suit in that court.

The answer of a witness in a deposition will not be rejected as hearsay, when he states the matter as of his own positive knowledge, unless the court can see clearly that he could not have had such knowledge.

A verdict will not be disturbed upon the ground that a leading question has been allowed, when it did not suggest the answer desired, or call for a simple affirmative or negative reply, or assume the existence of a fact in controversy, and the court can see that the other party was not prejudiced by the form of the question.

ASSUMPSIT to recover the amount of $6000, with interest thereon, with costs of protest, being the amount of a draft dated Aug. 1, 1864, payable at sight, to the order of W. S. Wheeler, Manager, and drawn by defendant upon Messrs. Bartlett & Smith, of Columbus, Ohio, and protested for non-payment, and paid by plaintiffs *supra protest*, for the honor of defendant and at his request, he having no funds in the hands of the drawees, or of plaintiffs. Plaintiffs' writ and specification may be referred to as part of the case. Plea, general issue.

Plaintiffs offered as a witness, Wm. H. Slade, who testified as to the existence of the plaintiffs' partnership and stated the names of the acting members. On cross examination he said that the company had written articles, whereupon the defendant objected, that, in order to prove the existence of the partnership, the written articles must be produced, or their absence accounted for before secondary evidence of their contents could be introduced, but the court overruled the objection, and held that, as between the partners and a third person, the evidence was admissible, and defendant excepted.

Plaintiff then re-examined his witness farther, when he stated that there had been a partnership with written articles at one time, between the members of the present firm and another person, who, in 1864, went out of the company, and the rest of the partners settled up with him, and then they, (the present firm,) went along, doing the same kind of business, by mutual consent, and that, between them as a distinct firm, there had never been any written articles of agreement.

It appeared that in May, 1864, the plaintiffs, through said Slade, who was then with the defendant at Vicksburg, entered into a written contract with defendant to purchase certain lots of cotton, on joint account, each party furnishing one half of the funds. In this written contract the particular lots of cotton that they were to buy, if they could, on such joint account, were described and mentioned by name.

Said Slade testified that on the 4th day of July, 1864, it was mutually agreed between him and the defendant to give up said contract, they having obtained all of these lots of cotton that they supposed could be obtained, though the contract was not destroyed or cancelled; that a settlement was made between them of all the transactions under the written contract and the capital and profits divided, and the whole thing closed up. That after this, on the same day, it was verbally agreed between him acting for his firm and defendant, that the defendant should, if possible, purchase a certain lot of cotton known as the Grand Gulf cotton, which was not named in the written contract; that this was to be bought on joint account, and that he gave the defendant authority to draw on the plaintiffs for one half the money he should need to purchase said Grand Gulf cotton, but that defendant had no authority to buy on joint account any other cotton except this lot; that witness authorized defendant if he was successful in purchasing this lot of cotton, to draw on plaintiffs for one half the money needed to pay for the cotton when it was delivered, defendant finding an equal share with them, and drawing on plaintiffs for such sums as were necessary to pay for this cotton as it was delivered; that witness introduced defendant to W. S. Wheeler, manager of the bank at Vicksburg, and desired said Wheeler to discount defendant's drafts on the plaintiff company, as he might need the money, to the amount of $25,000, which Wheeler agreed to do, and witness then returned to Columbus.

On the 18th of August, 1864, defendant drew the following draft:

"$6,000
          At sight
Pay to the order of W. S. Wheeler, Manager, six thousand dollars value, received, and charge the same to, with exchange on New York,
                                        GEO. H. TENNEY.
To Messrs. Bartlett & Smith,
          Columbus, Ohio."
On the back of which was the following endorsement:
Pay to the credit of my account with Messrs. Kirtland & Co., W. B. Meeker, Cash. Bank of New York.
                              W. S. WHEELER,
                                        Manager.
"Settled, June 5 | 65,
          by J. F. & Co."

On the same day, defendant wrote a letter to said Slade, in which he says: "I made a draft on you yesterday for six thousand dollars, under the following circumstances: There was a lot of 412 B | C. that I could buy, and I had bargained for it several days ago, and I knew according to the treasury regulations that was the only way to do anything here, and I had sent away most of my money, thinking that all was done up, and as the matter had to be closed up, I closed it, but you not being here to say what to do in the matter, I will become personally responsible to your house for the amount. I may get it soon, and there

may be some delay, but I have it so there is no chance to lose." Said letter may be referred to. There was no evidence that said 412 bales of cotton was any part of the cotton mentioned in the written agreement between plaintiffs and defendant, or any part of the Grand Gulf cotton before mentioned.

Defendant inquired of Slade the price of cotton within the rebel lines, where it was bought, and at Vicksburg and Memphis, where it was sold, but the plaintiff objected, and the court ruled out the evidence, and the defendant excepted.

Plaintiffs offered a letter of defendant in evidence, a copy of which is annexed, marked "A." Defendant objected to the letter, as being the whole of it, an offer to compromise. The court permitted the letter to go to the jury, instructing them that they might consider whether any or all the letter was intended as an offer to compromise, and that they should weigh as evidence only so much of it as they should find not to be part of any offer to compromise, and lay out of the case all the rest, and not consider it as evidence, and defendant excepted.

Plaintiff offered the deposition of Benj. E. Smith, at the caption, of which the defendant did not appear. Defendant objected to the caption, that the address or direction to the court on the outside of the caption does not contain a description of this suit, but of one in which George R. Tenney is defendant, and does not say that it is a suit pending in this court.

Upon the envelope containing said deposition, was the following directions : "To the Supreme Judicial Court for the Western Judicial District, for the county of Grafton, New Hampshire, March Term, 1867, Haverhill, N. H." Also, upon the same side of said envelope, and across the left end of the same, was the following : "Enclosed are depositions to be used in the action in which John Field & Co., are plaintiffs, and George R. Tenney is defendant. Sealed up by me,

LORENZO ENGLISH,

Notary Public,

Franklin Co. Ohio."

Plaintiff offered to show that there was no suit on the docket for this term against George R. Tenney, and claimed that this was a mere clerical error in inserting R instead of H., as the middle letter in defendant's name, and the court was satisfied that such was the fact, and overruled the objection, and the defendant excepted.

Defendant also objected that it does not appear that a copy of the notice to the adverse party, with proof of service of the same, was annexed to the caption as required by sec. 21, page 486 Comp. Statutes.

There was what purported to be a copy of a notice to take this deposition signed by Lewis R. Morris, Esq., with a return of George Morrison, deputy sheriff of Grafton county, N. H., upon the back thereof, stating that he gave the original notice of which that was a true copy to Harry Hibbard of Bath, defendant's counsel of record, which paper was properly annexed to the caption ; and the certificate of the magistrate in the caption among other things, is, that said depositions "were respectively subscribed by the said witnesses in my presence, and were taken

at the time and place in the annexed notice specified," &c., "and com-
menced at the time in the notice specified," &c., "the said George H.
Tenney being duly notified was not present," &c.   The court overruled
the objection, and defendant excepted.   .

Defendant also objected that it appears by the certificate of the mag-
istrate that the witnesses were sworn at the commencement of the tak-
ing that they would tell the truth, &c., and not at the close of each that
the same contained the truth, &c.

In one part of the caption the magistrate certifies that said Smith and
another appeared before him on, &c., at, &c., "and made solemn oath
that the within depositions by them severally subscribed, contained the
truth, the whole truth, and nothing but the truth, relative to the cause
for which they were taken," and in another part of the caption he certi-
fies that said Smith and the other witness "were by me severally sworn
to testify the truth, the whole truth, and nothing but the truth," &c.
The court overruled this objection, and the defendant excepted.

It appeared that said Smith, the witness, was a member of the firm
of ·John Field & Co., and also of the firm of Bartlett & Smith, Bank-
ers.

Defendant objected to the fifth interrogatory and answer in said depo-
sition, on the ground that it appeared from the answer itself, together
with other parts of the deposition, that the answer was not matter with-
in the knowledge of the witness, but hearsay ; but the court admitted
the question and answer, instructing the jury that if they should find
from the whole deposition that any of said answer was not within the
witness's own knowledge, they should lay so much of it out of the case
and not consider it at all, and defendant excepted.   A similar objection
was made to the eighth question and answer in the deposition so far as
it relates to funds in the hands of John Field & Co., but it was admit-
ted and defendant excepted.

Defendant objected to the tenth question and answer for the same rea-
son, and also upon the ground that the question was leading, but the
court admitted it, and the defendant excepted.

The 5th, 8th and 10th questions and answers in said deposition were
as follows :

Int. 5.   State what memoranda and erasures are on the back of said
draft, by whom they were made, and explain the purport of them ?

Ans.   The memoranda and erasures are apparent on the back of the
draft to which I refer.   The erasure in the endorsement on the draft,
"Messrs. Kirtland & Co.," was erased by the payee and endorser with-
out the knowledge or consent of John Field & Co., or any member of
said firm.   The draft was presented to Bartlett & Smith, and returned
without payment ; the draft was a second time presented to Bartlett &
Smith ; between the two presentations said Kirtland & Co., had failed,
hence the change in the direction to what account Bartlett & Smith
should place proceeds of the draft.   The endorsement purports to direct
Bartlett & Smith to place the proceeds of the draft to the credit of the
endorser with the Bank of New York.

Int. 8.   State what funds, if any, at the time said draft was drawn,

or afterwards, George H. Tenney had in the hands of Bartlett & Smith, or in the hands of John Field & Co.?

Ans. At the time when said draft was drawn, the said George H. Tenney had no funds whatever in the hands of Bartlett & Smith, or in the hands of John Field & Co., nor has he at any time since had any funds in the hands of either of said firms.

Int. 10. State whether said money was paid in consequence of the request of Tenney in said letter of the 18th of August, 1864, or because of any interest which John Field & Co., or any member of said firm had in the transactions of Tenney, in which said money was used?

Ans. Said money was not paid in consequence, or because, of any interest which John Field & Co., or any member of said firm, had in the transactions of Tenney, in which said money was used. But said money was paid in consequence of the request of said Tenney, in his said letter of the 18th day of August, 1864, in connection with the circumstances. Prior to the drawing of said draft, the said John Field & Co. had been operating in the purchase of cotton in the South, the said William H. Slade, to whom said letter is addressed, who was in the South in person, represented the interest of the firm. On the 4th of July, 1864, the said Slade returned to his home in Columbus, Ohio.

Said deposition, and the caption, and the envelope enclosing the same, may be referred to by either party.

The plaintiffs rested their case. The defendant made no opening statement, introduced no evidence, and the case was submitted to the jury by the court without argument on either side, and the jury returned a verdict for the plaintiff, which the defendant moves the court to set aside.

### LETTER MARKED "A."

LEBANON N. H. Nov 4 1865

W. H. Slade Esq }
Columbus Ohio  }

   Dr Sir

     The existing trouble between you or your firm & myself is something that I want settled up and I cannot think for once that you people or firm are not willing to give me a chance to pay it without distressing me if I will give you the proper security.

I do not want your money & will pay it back to you if I can have a chance to do so without distressing me even if *I never realize anything* from the *investment*, but I cannot pay it all now without driving me from my home which *I cannot think* you wish *to do* Now without further trouble I will make the following proposition and if you accept it I will meet the payments. I will pay you one Thousand dollars now & one Thousand more & the interest of it all on the first of next April giving you a mortgage of my farm for the payment of the remainder after the first thousand & pay it in Thousand dollar payments on each April or one each September would suit me better as I should have a chance to sell my crop of wool yearly & it never sells so early as April.

Otherwise I shall do just as I suppose every other person would under similar circumstances that is get rid of paying it if possible but I think I shall get some of the Cotton some time if I live and am able to go & attend to it myself. Please write immediately on receipt of this as I wish to know if such arrangements can be made before going South; at the same time I want you to receive any portion of it not less than $500—at any one time after the first $1000 is paid or all of it at any one time An immediate answer will much oblige

Yours &c

GEO. H. TENNEY

*C. W. & E. D. Rand,* for plaintiffs.

I. Though there be a written agreement of partnership, it is not necessary to prove the partnership, by such agreement, in an action between the partnership and third persons. Greenl. Ev. vol. 2, sec. 479; *Rich* v. *Flanders,* 39 N. H. 336.

II. There was in this case no written agreement of partnership between the plaintiffs.

III. Evidence of the price of cotton in Vicksburg and Memphis, if not incompetent, was certainly irrelevant and immaterial.

IV. The letter marked "A" was a proposition to pay an admitted debt, and no offer of compromise.

V. The deposition of Benjamin E. Smith was properly directed. The statute requires a "brief description of the case." Comp. Stat. ch. 200, sec. 23. If the case in which the deposition is to be used cannot be misunderstood by the court, the description is sufficient. The case could not be misunderstood here.

VI. The objection of defendant that "the certificate does not show that a copy of the notice is thereto annexed," is not true in fact. And the statute does not require that the certificate of the magistrate should state that a notice was annexed, but only that the notice *should* be annexed. Comp. Stat. ch. 200, sec. 21. Such notice was annexed here, and the court could take notice of the fact.

VII. The oath administered, as found by the case, page 6, was in the very language required by the statute. Comp. Stat. ch. 200, sec. 19.

VIII. When a witness states facts positively, the court will not decide that they were not within his knowledge. It is a question for the jury. *Dickinson* v. *Lovell,* 35 N. H. 17 and 18.

IX. The tenth interrogatory in Smith's deposition is not leading,

and the case of *Steen* v. *Little*, cited by defendant's counsel, seems to us to sustain our view of the question.

*Hibbard*, for defendant.

I.   The written articles were the only competent evidence of the partnership.   The fact that one of the original members had left the firm, does not alter the case.   No new agreement was made, and whether the plaintiffs really were partners or not, still depended upon the written articles.

II.   The defendant denied that it was agreed that the contract of May, 1864, should be given up.   He claimed his defence was that the contract remained in force, and that one of the lots specified therein was the lot which he bought and paid for in part with the avails of the draft in suit; and we submit that evidence of the enormous profits made on cotton so bought was competent to be considered by the jury upon the question whether it was more probable than otherwise that said contract was given up, especially taken in connection with the admitted fact, that the contract was not actually cancelled.

III.   The letter marked "A" was incompetent.
1.   It, and the whole of it, was a mere offer of a compromise.
2.   Whether the whole, or any part of it, was an offer of a compromise, was a question for the court, and not for the jury, and unless the whole letter was competent, the verdict must be set aside.   1 Greenl. Ev. 5.

IV.   The deposition of Smith should have been rejected.
1.   The address or direction was insufficient.   Comp. Stat. ch. 200, sec. 23.
2.   The certificate does not show that a copy of the notice is thereto annexed.
3.   The oath was not properly administered.

V.   It is plain that portions of the answers to the 5th, 8th and 10th questions are mere hearsay, and should not have been submitted to the jury.   It was the duty of the court to determine what was hearsay.

VI.   The 10th question was leading. · *Webster* v. *Clark*, 30 N. H. 255; *Willis* v. *Quimby*, 31 N. H. 485; *Steen* v. *Little*, 44 N. H. 113.

BELLOWS, J.   The evidence of partnership was competent, even if there were written articles.   It is so laid down in the elementary books, 4 Starkie's Ev. 1067, where it is said that the usual evidence is the oral testimony of clerks or other agents or persons who know that the alleged partners have actually carried on business in partnership; and it is unnecessary, even in criminal cases, to produce any deed or other

agreement by which the co-partnership has been constituted. Such is the doctrine laid down in 2 Greenl. Ev. sec. 479, and cases cited; and also in Collyer on Part. 3d Am. Ed. sec. 686, and sec. 769.

It is also held to be the law in *Alderson* v. *Clay*, 1 Stark. 405; and in *Bryer* v. *Weston*, 4 Shepley 261, where it is said that such proof is sufficient when the partners are plaintiffs as well as when defendants.

If the contents of the articles of co-partnership are to be proved, the articles must be produced or accounted for, if the proof be by the firm; and if by the other party, the notice must be given before parol evidence of their contents can be received. But it is otherwise as to the fact of partnership in suits between the partners and third persons. Indeed a contract to enter into partnership at a future time does not necessarily prove that such partnerships actually exist, for the parties, or some of them, may afterwards decline to carry their agreement into effect, leaving the persons aggrieved to their remedy upon the contract.

The fact, then, of their having actually become parties, and commenced business as such, is properly proved by oral evidence, but when the terms upon which the partnership is formed become material, the articles themselves, if any exist, should be produced.

If it were necessary to prove the mere fact of the existence of the partnership by the articles themselves, it would be because it is the regular and primary evidence of that fact, and therefore oral evidence would be secondary; and if so it would apply to the case where the plaintiff seeks to prove the defendants to be partners, as well as where the plaintiffs undertake to prove themselves to be partners.

In the former case, however, of a plaintiff seeking to recover of partners, it is too clear to admit of doubt that oral proof of the fact of partnership has never been understood to be secondary evidence; and so we think it must be where the plaintiffs are seeking to prove themselves to be partners.

In *Widdifield* v. *Widdifield*, 2 Burney 245, this doctrine was recognized, and the court held that oral proof that defendants were partners, was not to be regarded as proof of the contents of the articles.

This conclusion renders it unnecessary to consider the effect of the circumstance that one of the members of the firm had retired from it. It is clear, however, that the death of a member is ordinarily a dissolution of the partnership, and the retiring of a member stands probably upon the same ground. If so, and the partnership is dissolved, the articles are no longer in force, and in case a new partnership is formed by verbal agreement, they need not be produced.

The inquiry of Slade as to the price of cotton, at the place of purchase and at the places of sale, was made apparently to show that large profits might be expected from the purchase of the cotton in question, to render it probable that plaintiffs did engage in it; but there does not appear to be any evidence tending to show that plaintiffs did agree to take any interest in that purchase. On the contrary, it appears that they agreed to become interested in the purchase of certain lots named in the written agreement, and afterwards in a lot known as the Grand Gulf

cotton, and it is expressly stated in the case that there was no evidence that the cotton in question was any part of either of the lots mentioned.

It is urged for the defendant that the contract of May, 1864, was not given up, and that this was in issue at the trial, and that therefore the prospect of great profits afforded by the enterprise might properly be considered; but the difficulty is that the contract was limited to the purchase of certain specified lots of cotton, and the case finds that the lot in question was not one of these, and there is no evidence which legally tends to prove an extension of the contract to this lot.

If the defendant had assumed in his letter of advice that he had purchased this cotton on joint account, and the plaintiffs without objection had proceeded to honor the draft, a different case would have been presented. But he makes no such assumption. On the contrary, he says he will be personally responsible to the plaintiffs for the amount, saying he may get it soon, and there may be some delay, but he has it so there is no chance to lose.

The payment, then, of the draft by plaintiffs, in the manner stated by the witness, Slade, does not legally tend to prove that plaintiffs were interested in that purchase, and the inquiry respecting the profits likely to be realized was not relevant.

It is objected that the letter of the defendant of November 4, 1865, was an offer of compromise, and ought not to have been admitted; and also that the question whether it was or was not an offer of compromise, should have been determined by the court, and not by the jury.

In *Bartlett* v. *Hoyt*, 33 N. H. 165, it was decided that it was within the discretion of the court to submit to the jury the question whether a statement of a party was a mere offer of compromise, or an admission of a fact. In that case it was so submitted with proper instructions, and held well, and with that decision we are satisfied. In many cases it certainly would be convenient to submit the question to the jury, inasmuch as the construction to be put upon the language used would often be materially modified by the nature of the case and the surrounding circumstances; and with proper instructions, which can always be secured, we think no serious mischief would be likely to arise from the exercise of this discretion. Of course, the discretion would be cautiously exercised, as it appears to have been in this case. To the instructions no specific exceptions were made, the objection appearing to be to the submission of the evidence to the jury, at all; and it is therefore to be assumed that the instructions were right.

This makes it unnecessary to consider whether the letter was in fact admissible. If it is to be understood as an admission that the defendant owed the money, and was proposing how to secure and pay it, it would come directly within the decision of *Snow* v. *Batchelder*, 8 Cush. 516, which held such a statement not to be an offer of compromise, an offer to buy peace, but an admission of the debt, and a proposal for terms of settlement, and therefore competent.

In *Hartford Bridge* v. *Granger*, 4 Conn. 148, the distinction is held to be between admissions of a fact because it is a fact, and mere offers to buy peace. In *Thompson* v. *Austin*, 2 D. & R. 358, *Bai-*

*ley*, J., says that the essence of an offer to compromise is, that the party making that offer is willing to submit to a sacrifice and to make a concession. See, also, 1 Greenl. Ev. sec. 192, and notes. Of the same character is the doctrine of *Sanborn* v. *Nelson*, 4 N. H. 505.

In the case at bar, the defendant's letter is clearly capable of a construction that would make it an admission that he owed the debt as a fact, and not as a mere offer or concession to buy peace, and so construed it would be competent. It may be suggested, also, that the jury has found, as the court also would have found, as matter of law.

The direction of the deposition of Benjamin E. Smith must be regarded as sufficiently certain, notwithstanding the mistake in the initial letter of the defendant's middle name. It is obvious that there could be no uncertainty in respect to the cause intended to be described, and to reject the deposition for this error would be a refinement in technicality that is not countenanced by the course of the court. The notice of the caption was properly annexed, and was referred to in the certificate, although it is not required by the statute that it should be.

The certificate of the oath of the deponent is sufficient. It states that they made oath that the depositions by them subscribed, contained the truth, &c., and also that they were severally sworn to testify the truth, &c., which would seem to imply that they were sworn at the commencement, as the other part does that they were sworn at the close, a practice which exists in many of the States.

The statements of the witness, Smith, in reply to interrogatories five and eight, are made as of positive knowledge, and he might have possessed that knowledge in a sense which would authorize him to testify as he has done. He may have been present at the erasure of part of the endorsement on the bill, and knew that plaintiffs were not, and could not have been consulted. So he may have known from defendant's own statements that he had no funds in the hands of the plaintiffs, or Bartlett & Smith. It is true that the information of the witness may have been derived from hearsay, but the court cannot say that it is so, when the statements are positive and might be true. This was, therefore, properly left to the jury. *Dickinson* v. *Lovell*, 35 N. H. 17. Had the defendant cross-examined the witness, as he might have done, and shown clearly that his statements were merely hearsay, they should have been rejected, but, as it stands, we think there is no error.

The remaining question respects the form of the tenth interrogatory in the same deposition. The witness was asked to state whether the money was paid in consequence of the request in defendant's letter, or because of any interest of the plaintiffs, or any member of their firm, in the transaction, and it is urged that this is leading. The precise ground of objection is not stated, but we think it cannot be said that the question calls for a simple affirmative or negative answer, as yes or no ; or that it suggests the answer which is desired ; neither is it open to the objection that it is a fact in controversy. If it be objectionable at all, it must be that it suggests the language that might be used, and was in fact used, substantially, in the answer.

It is quite obvious that a better form might, and ought to have been,

adopted; and the question, Why was the money paid by the plaintiffs? would have been free from any controversy.   As the question is framed it is not free from doubt and perplexity, which, with a little care, might have been avoided.   We are inclined, however, to think that there is no such defect as ought to disturb the verdict, for notwithstanding the answer to both branches of the inquiry is substantially in the words of the question, there was nothing to indicate what answer was desired, and the attention of the witness was called to the precise points about which his testimony was wanted, in a form as little open to objection as any that occurs to us, and the only question is, whether his attention could properly be so directed to the matters specified.

In *Webster* v. *Clark*, 10 N. H. 245, it was held that the inquiry, "Did you, or did you not, see put into the box four blue, pilot overcoats?" was not of such character as to justify disturbing the verdict. In *Willis* v. *Quimby*, 31 N. H., it was held that a question in respect to a certain conversation, whether it was in earnest or in joke, was not leading, and a verdict was set aside for rejecting such a question.

The question before us does not come within any of the objections stated in *Steer* v. *Little*, 44 N. H. 613, and upon the whole we are of the opinion that the verdict should not be disturbed on account of the admission of this interrogatory.

Upon these views there must be

*Judgment on the verdict.*